### *In re* NEW YORK & LONG ISLAND BRIDGE CO.

(*Supreme Court, Special Term, New York County.*    March 7, 1889.)

BRIDGES—RIGHTS OF CORPORATION.

The petitioner was incorporated by Laws N. Y. 1867, c. 395, for the purpose of building a bridge.  The bridge was to be built within a certain time, or all the rights and privileges of the petitioner under the act would cease.  By Laws 1885, c. 392, the period for the construction of the bridge was extended, and it was provided that it should be built for railway, foot, and carriage travel.  *Held,* that as the legislature had no power to make the provision for railroad travel, under Const. N. Y. art. 3, § 18, providing that the legislature shall not pass a private or local bill granting to any corporation the right to lay down railroad tracks, or provide for building bridges and chartering companies for such purpose, the extension of time granted to the petitioner must fall with the condition upon which it was granted; and that an application of the petitioner to acquire certain lands must be denied, though at the time of such application no bridge had been built nor any rails laid.

Application by the New York & Long Island Bridge Company to acquire certain lands belonging to the city of New York.

*Francis M. Scott,* for petitioner.    *H. B. Twombly,* for the City.

VAN BRUNT, P. J.    Various grounds of objection were raised by the counsel for the city upon the argument of the application of the New York & Long Island Bridge Company.    In view of the conclusion at which I have arrived, in reference to one of the points raised by the counsel for the city, it is not necessary that any other objections should be considered.    It is urged that by section 3, c. 392, Laws 1885, the authority to construct a railway is conferred in violation of the provisions of section 18, art. 3, Const. N. Y.    The provisions of the constitution are that the legislature shall not pass a private or local bill granting to any corporation, association, or individual the right to lay down railroad tracks, or providing for building bridges and chartering companies for such purpose, except on the Hudson, below Waterford, and on the East river or other waters forming a part of the boundaries of the state.    The answer to the objection which is offered by the petitioners is that the clause of the constitution claimed to be violated is that which forbids the legislature from passing any private or local bill granting corporations, associations, or individuals the right to lay down railway tracks, but that the same section expressly confers the right to build bridges over the East river, and the right to so construct the bridge as to permit the running of a railway over it, as a necessary incident to such bridge, and that at most all the statute amounts to is to permit the company to construct the bridge, and, after it is built, some one who is authorized to do so may lay down railway tracks upon it; and that if this company has not the right to do so it can be acquired by some company having unquestioned right.    And it is also urged that if these provisions were unconstitutional the petitioners have still the unquestioned right to build a bridge for foot and carriage traffic; and that the only question now

before the court is whether the company has the right to build the bridge at all; that the uses to which it is to be put when constructed are not before the court at present, and that it will be time enough to discuss them when the question is properly presented. We think that the validity of the legislation under which the petitioners propose to act is clearly before the court upon the present application, and, if they have no standing because of the invalidity of such legislation, clearly they have no power to initiate proceedings by which the right of eminent domain is to be exercised. It is not the case, therefore, of a property owner raising an objection before he is hurt, as is claimed by the counsel for the petitioner; but it is the case of a property owner challenging the right of a corporation to deprive him—because of legislation—of property of which he is the owner. The present rights of the petitioner are conferred by various acts of the legislature, the first of which appears to be chapter 395, Laws 1867, incorporating the New York & Long Island Bridge Company. There is a provision in that act that the bridge shall be commenced within two years from its passage, and shall be continued, without unreasonable delay, until it is completed, or the act and the rights and privileges granted thereby shall be null and void. In the year 1871 additional powers were conferred upon the New York & Long Island Bridge Company, and the time for the completion of the bridge was extended to the 1st of June, 1879, the work to be commenced within two years from the passage of the act. In 1879, the time for the construction of the bridge was enlarged to the 1st day of June, 1885. In none of these acts thus far does any power to build a bridge for railway travel seem to have been conferred, nor is its character for carriage in any way specified. In 1885, by chapter 392, the period for the commencement of the actual construction of the bridge was extended to the 30th of May, 1888, and it was provided that said bridge should be built for railway, foot, and carriage travel. This, it would seem, is a clear attempt to confer by means of an amendment of the charter of the corporation rights which had not previously existed, viz., that the bridge should be built for the purposes of railroad travel. Prior to this time there was no designation as to the kind of bridge to be built, and, were it not for the inhibition contained in the constitution in respect to the granting of rights to lay down railway tracks to any corporations, associations, or individuals, there seems to be no reason why the bridge in question might not have been built, capable of accommodating railway travel. The claim made upon the part of the petitioners that the words in question did not confer any right to lay down railroad tracks, but only to build a bridge suitable for railway travel, cannot prevail, because, if the bridge is to be suitable for railway travel, it must have the appliances which are necessary for the conducting of a railroad. But I imagine that if these petitioners were defending their right to maintain the railway upon this bridge they could shelter themselves with perfect safety under the grant contained in this act, were it not for the prohibition contained in the constitution. We would have a different argument presented, and one to which there does not seem to be any answer, namely that the making of provision for railroad travel, which they were required to do, implied the power to do everything necessary to carry on the railroad business. But it is said that the city is crying before it is hurt, because they have not built any bridge, and have not attempted to lay any rails, and, as a consequence, if they have not the power to lay rails there, they can be prevented, and nobody will be hurt. The difficulty with this proposition is that the requirements of the act are that the bridge shall be of a certain character, and it is to be presumed that the extended time granted by this act for the consummation of the construction of the bridge, and the many other concessions, were induced by the fact that this bridge was to be of a particular character; that additional obligations were placed upon this corporation by the legislature as a condition of these concessions. Now, it cannot be that when it turns out that the cor-

poration cannot comply with the conditions upon which the extension was granted they can claim the benefit of the extension. It will not do, therefore, to say that the corporation has the power to build the bridge for carriage and foot travel and abandon the railroad project, and thereby bring themselves within the requirements of the law. The provision of the law is that they build a bridge for railroad travel, and, if the legislature had no power to make such a concession and exact such a requirement, then the extension dependent upon these changes necessarily falls with the want of power of the legislature to put upon these petitioners these additional requirements which were the consideration for the concession in respect to time. It is undoubtedly true that where the parts of an act are independent and not related one to the other, and where some are unconstitutional and others constitutional, the unconstitutional ones may fall, and the constitutional provisions still remain. But in the case at bar it is a single piece of legislation relating to a single subject. The concessions and the obligations are mutual and when you take away the right to fulfil one of the obligations the consideration for the concessions necessarily falls. The provision of the act is that such bridge shall be built for railroad travel; and, therefore, if the corporation have no power to build the bridge for railroad travel, they are unable to comply with the conditions upon which their right of construction depends. It seems to me, therefore, that for the reasons stated the objection is well taken, and the application for the appointment of commissioners should be denied, with costs.